UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LYNELL AVERY DENHAM,<br><br>                Plaintiff,<br><br>    v.<br><br>DETECTIVE ALLAN O'NEILL,<br><br>                Defendant. | Case No.C19-1250-TSZ-MLP<br><br>REPORT AND RECOMMENDATION |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

This is a *pro se* civil rights action brought under 42 U.S.C. § 1983. Plaintiff Lynell Denham has been granted leave to proceed with this action *in forma pauperis*. Service has not been ordered. This Court, having reviewed Plaintiff's amended complaint, and the balance of the record, concludes that Plaintiff has not stated a claim upon which relief may be granted in this action. The Court therefore recommends that Plaintiff's amended complaint and this action be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.   BACKGROUND

On August 8, 2019, Plaintiff submitted to the Court for filing a civil rights complaint under § 1983. (*See* Dkt. # 1.) Plaintiff asserted in his complaint a number of claims relating to his

REPORT AND RECOMMENDATION
PAGE - 1

arrest and conviction in King County Superior Court on charges of second degree burglary and first degree trafficking in stolen property. (*See* Dkt. # 8.) The charges on which Plaintiff was convicted arose out of the burglary of a jewelry store in November 2016 and appear to be the basis of his current confinement.

Plaintiff identified the following ten claims in his complaint: (1) fabrication of evidence; (2) false arrest; (3) unreasonable search; (4) selective prosecution; (5) abuse of process; (6) libel; (7) judicial deception; (8) conspiracy; (9) neglect; and (10) due process violations. (*See id*.) Each of these claims was based on Plaintiff's belief that the evidence known to Defendants during the investigation and subsequent prosecution of the criminal case against him was insufficient to support the issuance of a search warrant in December 2016, the filing of criminal charges in October 2017, or his conviction in April 2018. Plaintiff identified the following Defendants in his complaint: King County Superior Court Judge Ken Schubert; Kirkland Police Detective Allan O'Neill; King County Prosecutor Daniel Satterberg; and, Deputy King County Prosecutors Gavriel Jacobs, Susan Harrison, and Dennis McCurdy. (*Id*. at 1.) Plaintiff requested over $10 million in damages, and injunctive relief in the form of release from custody. (*See id*. at 82-88.)

After reviewing Plaintiff's complaint, this Court determined that the pleading was deficient and it therefore issued an Order declining to serve the complaint and granting Plaintiff leave to file an amended complaint. (Dkt. # 13.) The Court noted therein that Plaintiff had identified only one potentially viable Defendant in his complaint, Detective O'Neill, and that the remaining Defendants were likely entitled to absolute judicial or prosecutorial immunity given the nature of Plaintiff's claims. (*Id*. at 3.) As to the claims asserted against Detective O'Neill, the Court explained that it appeared Plaintiff was attempting to use this civil rights action to

REPORT AND RECOMMENDATION
PAGE - 2

challenge the validity of the conviction which resulted in his current confinement and that such claims would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[1] The Court advised Plaintiff that if he elected to proceed against Detective O'Neill, he would have to allege claims pertaining only to the conduct of Detective O'Neill, he would have to identify a federal constitutional basis for each claim, and he would have to clearly demonstrate that the claims alleged were not barred by *Heck*. (*Id.* at 6.)

Plaintiff filed an amended complaint on October 7, 2019 naming Detective O'Neill as the only Defendant. (Dkt. # 17.) Plaintiff identifies the following six claims in his amended pleading: (1) Defendant procured a search warrant through judicial deception; (2) Defendant effectuated a false arrest without probable cause; (3) Defendant fabricated false evidence against him; (4) selective enforcement equal protection violation; (5) unreasonable search; and (6) abuse of process. (*Id.* at 4-17.) Plaintiff submitted with his amended complaint a number of exhibits including police and laboratory reports, warrant materials, a witness statement, and a certification for determination of probable cause. (*See* Dkt. # 17-1.) A review of Plaintiff's amended complaint, and the attached exhibits, make clear that Plaintiff has not stated any plausible claim for relief against Detective O'Neill.

### III.   DISCUSSION

#### A.   Legal Standards

Rule 8(a) of the Federal Rules of Civil Procedure provides that in order for a pleading to state a claim for relief it must contain a short and plain statement of the grounds for the court's

---

[1] In *Heck*, the United States Supreme Court held that a § 1983 claim that calls into question the lawfulness of a prisoner's conviction or confinement does not accrue "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489.

REPORT AND RECOMMENDATION
PAGE - 3

jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. The statement of the claim must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The factual allegations of a complaint must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, a complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Plaintiff's amended complaint, like his original complaint, fails to meet these standards.

**B.    Analysis**

   *1.    Challenges to Search Warrant*

Plaintiff's first, third, and fifth claims for relief all effectively challenge a search warrant issued by a judge of the King County Superior Court in December 2016 in relation to Detective O'Neill's investigation of the November 2016 jewelry store burglary Plaintiff was ultimately convicted of. (*See* Dkt. # 17 at 4-5, 7-8, 11-12.) Plaintiff alleges in his first claim for relief that Detective O'Neill procured a search warrant for his home and cell phone through "judicial deception." (*Id*. at 4.) Though not entirely clear, it appears that the alleged act of "judicial

deception" was Detective O'Neill's incorporation into his search warrant application language to the effect that there was probable cause to believe Plaintiff had committed the crimes of burglary, theft, and trafficking in stolen property when Plaintiff did not believe there was sufficient evidence to support that statement. (*Id*. at 5.)

Plaintiff alleges in his third claim for relief that Detective O'Neill "fabricated" false evidence against him knowing that he was innocent. (*Id*. at 7.) Once again, the facts alleged in support of this claim are not entirely clear. However, Plaintiff appears to complain that Detective O'Neill, in his search warrant application, attributed the crimes of burglary, theft, and trafficking in stolen property to Plaintiff even though one of the witness statements obtained by Detective O'Neill showed that Plaintiff had valid identification and appropriate paperwork for the 5.29 carat diamond he was trying to sell, and even though an Automated Fingerprint Identification System ("AFIS") report excluded Plaintiff has the source of fingerprints found at the scene of the burglary. (*Id*.) Plaintiff alleges in his fifth claim for relief that the search of his home which was conducted by Detective O'Neill in conjunction with the Pierce County Sheriff's Department was unreasonable because the AFIS report excluded Plaintiff as the source of the fingerprints found at the scene of the burglary, and because nothing from the burglary was discovered during the search. (*Id*. at 11.)

In order to prevail on a claim that police procured a warrant through deception, a plaintiff "must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (citations omitted). While Plaintiff claims that Detective O'Neill deceived the court in his warrant application, Plaintiff's own exhibits contradict that claim. The search

REPORT AND RECOMMENDATION
PAGE - 5

warrant materials submitted by Plaintiff in support of his amended complaint confirm that Detective O'Neill included language in the search warrant that there was probable cause to believe Plaintiff committed specified crimes. (*See* Dkt. # 17-1 at 23.) In the accompanying search warrant affidavit, Detective O'Neill detailed the investigation he had undertaken to that point. (Dkt. # 17-1 at 10-17.) It was up to the reviewing judge to determine whether probable cause had indeed been established. The judge was obviously persuaded that probable cause had been established because he signed the warrant. (*See id*. at 23-26.) The fact that Plaintiff believes there was insufficient evidence to support issuance of the warrant is irrelevant.

Plaintiff's claim that Detective O'Neill fabricated evidence in the warrant application is also contradicted by Plaintiff's exhibits. Plaintiff references a witness statement provided by a jeweler, Mr. Andy Le, in which Mr. Le indicated that when Plaintiff approached him to sell the 5.29 carat diamond that was subsequently traced back to the jewelry store burglary, Plaintiff showed him valid identification and appropriate paperwork for the diamond. (*See id*. at 39-42.) Mr. Le's witness statement and Detective O'Neill's warrant affidavit are both a part of the record before this Court. (*Id*. at 10-22, 39-42.) A review of those documents reveals that the pertinent details from Mr. Le's witness statement were, in fact, included in the warrant affidavit. (*See id*. at 13-15, 39-42.) There is no evident fabrication in the warrant application as it relates to the statement of Mr. Le.

To the extent Plaintiff complains that the AFIS report information was not included in the warrant application, Plaintiff's exhibits make clear that this omission was not material to the finding of probable cause. The AFIS report did, in fact, exclude Plaintiff as the source of various prints found at the scene of the burglary, while identifying a single fingerprint belonging to

REPORT AND RECOMMENDATION
PAGE - 6

someone other than Plaintiff. (*See id*. at 35-37.) However, the fingerprint identified in the AFIS report was found on an electrical panel box in a maintenance room outside the burglarized store, and Detective O'Neill was able to determine that the print belonged to an individual who was employed at Evergreen Power Systems, an electrical contractor. (*Id*. at 5, 35.) No prints belonging to that individual were found inside the jewelry store. (*Id*. at 5.) This fingerprint information was arguably irrelevant in the context of the larger investigation and the exclusion of this information from the warrant application therefore cannot be deemed material. In sum, Plaintiff has not stated any plausible claim for relief arising out of Detective O'Neill's conduct in relation to the challenged search warrant.

The Court notes as well that the harm Plaintiff claims to have suffered as a result of Detective O'Neill's alleged misconduct is not, in any event, compensable in this civil rights action. Specifically, Plaintiff claims that as a result of Detective O'Neill's alleged misconduct in relation to the search warrant, his property was lost, damaged, or stolen. (Dkt. # 17 at 5, 8, 12.) Claims of lost or damaged property are not viable under § 1983. The Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. However, where a city employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Washington State provides a post-deprivation remedy for the alleged tortious conduct of city and county

REPORT AND RECOMMENDATION
PAGE - 7

employees under RCW 4.96. Thus, any claims pertaining to the loss of Plaintiff's property are not cognizable in this action.

Plaintiff also asserts, with respect to his first and third claims for relief, that Detective O'Neill's alleged misconduct caused his state and federal probation terms in prior criminal actions to be extended. (Dkt. # 17 at 5, 8.) These claims present the same *Heck* problems that were prevalent in Plaintiff's original complaint. Plaintiff does not show that these extended probationary terms have been invalidated and, thus, to the extent Plaintiff seeks relief based on those extensions his claims are not cognizable in this action.

2. *False Arrest*

Plaintiff asserts in his second claim for relief that Detective O'Neill effectuated a false arrest without probable cause on October 3, 2017. (Dkt. # 17 at 6.) Plaintiff maintains that the detective did not proffer any evidence in the certification for determination of probable cause he sent to the King County Prosecuting Attorney's Office which supported his conclusion that Plaintiff had committed the crimes identified therein. (*See id.*)

Plaintiff's exhibits show that Detective O'Neill completed his investigation and submitted his paperwork to the prosecutor's office on October 3, 2017. (Dkt. # 17-1 at 9, 27-30.) King County Superior Court records show that a criminal information charging Plaintiff with offenses arising out of the detective's investigation was filed on October 9, 2017, and that a warrant for Plaintiff's arrest was issued the same day. *See State of Washington v. Lynell Avery Denham*, No. 17-1-06567-2 SEA, *available at* https://kingcounty.gov/courts/clerk/access-records/records-portal.aspx. However, that warrant was not immediately executed because Plaintiff was at that time confined at the Federal Detention Center in SeaTac, Washington where

REPORT AND RECOMMENDATION
PAGE - 8

he was awaiting disposition of supervised release violations in his federal criminal proceedings, *United States v. Denham*, CR08-248-RSL. By the time Plaintiff was arrested in the King County case a finding of probable cause had already been made by the superior court. The fact that Plaintiff disagrees with that finding is irrelevant. Moreover, the fact that legal process had been issued in the King County case by the time Plaintiff was taken into custody there means that his claim is barred by *Heck*. *See* 512 U.S. at 484.

### 3. Selective Enforcement

Plaintiff identifies his fourth claim for relief as "Selective Enforcement Equal Protection Violation." (Dkt. # 17 at 9.) In this claim, Plaintiff complains that Detective O'Neill, in his attempt to locate jewelry stolen from the store Plaintiff was convicted of burglarizing, made contact with a number of jewelers who purchased the 5.29 carat diamond Plaintiff initially sold to Andy Le, but none of those individuals were ever named as suspects or investigated for burglary or trafficking in stolen property as Plaintiff was. (*Id*. at 9-10.) Plaintiff states that the four other "buyers" were either Asian or white, while he is a black man "with an unfortunate criminal past." (*See id*. at 10.)

In order to prevail on an equal protection claim under the Fourteenth Amendment in this context, "a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012) (quoting *Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007)). In order to establish a discriminatory effect, a plaintiff "must show that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Detective O'Neill's investigatory report, which was submitted by Plaintiff with his

REPORT AND RECOMMENDATION
PAGE - 9

amended complaint, demonstrates that Plaintiff and the other individuals who bought and/or sold the diamond were not similarly situated. (*See* Dkt. # 17-1 at 3-9.)

Notably, Detective O'Neill learned that only a day or two after the burglary was discovered by the jewelry store's owner, Plaintiff offered to sell a diamond which had been stolen in that burglary to jeweler Andy Le. (*Id*. at 3-4.) The diamond was then bought and/or sold by a number of other jewelers before it was finally recovered by the police. (*Id*. at 4-5.) Nothing in the report suggests that these jewelers had any knowledge the diamond was stolen. Detective O'Neill also discovered through his investigation that Plaintiff had pawned a number of other items that were taken from the store during the burglary. (*Id*. at 5.) Detective O'Neill ran a records check on Plaintiff which revealed that Plaintiff had previously been arrested for another jewelry store burglary with similarities to the burglary he was investigating, and that Plaintiff had numerous prior burglary arrests. (*Id*. at 4.) Finally, Detective O'Neill reviewed Plaintiff's cell phone records and was able to determine that Plaintiff was in the vicinity of the jewelry store during the time the burglary occurred and in the vicinity of every store where he pawned the stolen jewelry. (*Id*. at 8.)

Given all of the information gleaned by Detective O'Neill during the course of his investigation that connected Plaintiff to the burglary, Plaintiff's selective prosecution claim is simply not plausible.

    4.  *Abuse of Process*

Plaintiff asserts in his sixth claim for relief that Detective O'Neill used an authorized legal process to achieve illegitimate ends. (Dkt. # 17 at 12-13.) Plaintiff incorporates into this claim the numerous grievances asserted in his earlier claims. Even assuming there is a federal

constitutional basis for an abuse of process claim, the claim fails for all the reasons identified above.

## IV.    CONCLUSION

Plaintiff's amended civil rights complaint does not state any plausible claim for relief under 42 U.S.C. § 1983. Accordingly, this Court recommends that Plaintiff's amended complaint and this action be dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii). The Court further recommends that this dismissal be counted as a strike under 28 U.S.C. § 1915(g). A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 20, 2019**.

DATED this 27th day of November, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 11